STATE OF CONNECTICUT *v.* LARRY PLUDE
(10931)

HEIMAN, FREEDMAN and CRETELLA, Js.

Argued January 11—decision released March 9, 1993

528

*James J. Ruane,* with whom was *Michael A. Fitzpatrick,* for the appellant (defendant).

*Frederick W. Fawcett,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, *Stephen J. Sedensky III,* assistant state's attorney, and *Lisa Besseghini,* law student intern, for the appellee (state).

HEIMAN, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of three counts of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1),[1] and three counts of risk of injury to a child in violation of General Statutes § 53-21.[2] The jury acquitted him of an additional count of sexual assault in the second degree and an additional count of risk of injury to a child. On appeal, the defend-

---

[1] General Statutes § 53a-71 provides in pertinent part: "(a) A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and such other person is (1) under sixteen years of age . . . ."

[2] General Statutes § 53-21 provides in pertinent part: "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined . . . or imprisoned . . . or both."

ant claims that the judgment is fatally flawed in that (1) the trial court unconstitutionally deprived him of the common law defense of emancipation as to each of the counts of the information, (2) the trial court's charge to the jury was so constructed as to mandate verdicts of guilty, thus depriving the defendant of his constitutionally guaranteed right to a fair trial, and (3) the trial court failed to charge the jury that an implied element of the offense of sexual assault in the second degree is that the state must prove that the defendant knew or had reason to know that the victim was under the age of sixteen years. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In January, 1990, the victim, R, who was born April 20, 1976, was enrolled as a freshman at Central High School in Bridgeport. The defendant, Larry Plude, was a teacher at that school. The victim was not a student in any class that he taught.

In January, 1990, the victim's relationship with a boyfriend ended. Upset by that turn of events, she confided her unhappiness to one of her friends. At the suggestion of that friend, the victim contacted the defendant by telephone. They made arrangements to meet at school during the lunch period. They met at the entrance to the cafeteria. The victim's friend introduced her to the defendant. After this meeting, the victim called the defendant a second time and they made arrangements to meet after the school day in the faculty parking lot behind the school building. The defendant drove the victim to his house. They talked for a time and hugged and kissed and the defendant then drove the victim to her house. On a second occasion, he took the victim to his house and touched and kissed the victim's breasts and vagina.

On February 13, 1990, the defendant engaged in sexual intercourse with the victim for the first time. From that date through May or June of that year, the defendant engaged in both vaginal intercourse and fellatio with the victim at least once or twice a week. At a later point, the frequency of sexual relations increased to three or four times a week. The defendant frequently sent the victim notes, leaving them in her school locker and other locations, expressing his affection for her and his desire to continue the relationship.

The victim's fourteenth birthday was on April 20, 1990. To mark the occasion, the defendant gave the victim money with which to purchase a gift.

After the school year concluded in June, the frequency of sexual activity decreased to about once a week. In July, 1990, the defendant began ignoring the victim. After a number of attempts to see the defendant, the victim finally began to stay away from him.

When the school year commenced in September, the victim confided in Michele Audia, one of her teachers, that she had been involved in a sexual relationship with the defendant. The victim was frightened and extremely upset. On the same evening that the victim spoke with Audia, the defendant also called Audia. Audia told the defendant that she knew of his relationship with the victim. The defendant responded by saying, "Oh, my God. Oh shit. Um, what am I going to do?" The defendant subsequently contacted the victim and asked her to tell people that she had exaggerated in describing her sexual activities with him. The victim declined to do so.

I

The defendant first asserts that the trial court unconstitutionally deprived him of his right to present the common law defense of emancipation as to each of the counts charged in the information. We are unpersuaded.

The defendant claims that the issue of emancipation as a defense was raised by him in three ways: first, by attempting to elicit from the victim that she had consented to all of the defendant's acts of misconduct;[3] second, by claiming that the evidence was supportive of a defense of emancipation;[4] and, third, by requesting

---

[3] During cross-examination, the defendant attempted to elicit from the victim the fact that she had consented to the defendant's misconduct. The following occurred:

"Q. [by Defense Counsel] . . . . Now, you testified also that in regard to your relationship, as you say, with Mr. Plude, there came a time when you [were] in his bedroom and he touched your body.

"A. Yes.

"Q. Is that correct? And you testified that there was an occasion when he would touch your breasts, correct?

"A. Yes.

"Q. And he would touch your vagina, as you say.

"A. Yes.

"Q. He would touch your inner thighs, correct?

"A. Yes.

"Q. And other parts of your body, correct?

"A. Yes.

"Q. Now, my question to you is this, and if there's an objection would you wait for his Honor to rule, when you—when Mr. Plude, according to you, touched those parts of your body did you consent to that?

"A. Yes, I did.

"Q. You did.

"A. Yes.

"Q. And on all the occasions that that occurred did you always consent?

"A. Yes, I did."

The assistant state's attorney objected to the relevancy of the issue of consent and requested that the court strike the victim's responses on this issue. The trial court in response to the objection ruled as follows:

"[The Court]: Your objection is untimely and that answer—question and answer to both of them will stand but in the future since the rule is that the consent is not an issue in either instance, that if you ask the question continuously you're going to have a problem with me."

[4] The following occurred with respect to the defendant's claim concerning emancipation as a defense:

"[Defense Counsel]: . . . . My final point on that is, the act of consent to either sexual touching or sexual intercourse may not be a defense and Your Honor may charge the jury that that doesn't matter at all as a defense. I would submit it's an evidentiary fact that is supportive of the defense of emancipation. If a minor is by court order or by conduct emancipated,

the trial court to charge the jury regarding the issue of emancipation.[5] While the record amply supports the defendant's assertion that the issue was properly raised by him in each of the three ways, the claim is without merit since no defense of emancipation exists, either

consent to sexual intercourse can in fact be a fact that would prove emancipation and the defendant cannot and—if the jury, and it's a jury question I would submit, decide she was emancipated, as a matter of law they could not convict him of risk of injury to a minor because if they find emancipation she is no longer a minor. So it's an evidentiary fact and I also claim that basis and I will submit to the court a request to charge along those lines."

[5] The defendant filed three specific requests to charge relating to his claim of the existence and applicability of a defense of emancipation. (References to the legal and factual basis for each request to charge have been omitted.)

"2. Emancipation at Common Law

"In this case, certain evidence has been produced which requires me to charge you on the legal principle of emancipation of a minor. Emancipation of a minor is a situation by a minor who was once in the power or under the control of another is rendered free and thereby acts and can be considered as an adult for all legal purposes. Connecticut law provides that the emancipation can be accomplished either by the express act of the parent, or by the conduct of the parent. For an emancipation, [it] is not necessary that the Court enter an order emancipating the minor, even though Connecticut provides a statutory procedure if the parties chose to use such a procedure. An implied emancipation results when the parent, without any express agreement, by his acts or conduct impliedly consents that his minor child may leave home and shift for himself, have his own time, and the control of his earnings, and it may be inferred from and shown by circumstances. . . ."

"3. Emancipation As Factual Questions

"It is solely the province of the jury to determine whether or not [R] was emancipated due to her actions and the actions of her parents. While there is evidence that [R] resided at her parents home in 1990, that fact is *not* determinative of this issue. A minor can continue to be furnished bed and board by her parents and yet still be found to have been emancipated. The provision of bed and board is but one factor in determining this issue, it is in no sense a factor which must control your decision. . . . (Emphasis added.)"

"4. Emancipation As A Defense

"In considering the charge of sexual assault in the second degree and risk of injury to a minor as alleged in the Information, you may consider as a defense the emancipation of [R]. If you find, after a review of all the evidence presented, that there is substantial evidence that [R] was an eman-

at common law or statutorily, to a charge involving sexual assault in the second degree or to one of risk of injury to a child.

The legal doctrine of emancipation is a concept generally related to the civil law. See *Sillman* v. *Sillman,* 168 Conn. 144, 150, 358 A.2d 150 (1975). The concept is most often invoked in the context of support obligations; id.; *Gillespie* v. *Gillespie,* 8 Conn. App. 382, 385, 512 A.2d 238 (1986); in areas of the right of a child to sue or be sued; *Dubay* v. *Irish,* 207 Conn. 518, 523, 542 A.2d 711 (1988); *Blancato* v. *Feldspar Corporation,* 203 Conn. 34, 522 A.2d 1235 (1987); or in areas involving the obligations of minors arising out of contractual relationships. *Blancato* v. *Feldspar Corporation,* supra, 41. Emancipation occurs when a person who was once in the power or under the control of another is rendered free. *Wood* v. *Wood,* 135 Conn. 280, 283, 63 A.2d 586 (1948). A minor who is placed in a new relationship inconsistent with her former relationship as part of her parent's family is emancipated. Id. Counsel has not pointed us to, nor has our independent research led us to a case in which the emancipation of a child was successfully invoked to defend against a charge involving sexual misconduct with an underage victim. More important, such a result would be bizarre in the extreme, making a mockery of the clear legislative language used in General Statutes §§ 53a-71 (a) (1) and 53-21.

General Statutes § 53a-4, the saving clause in the penal code, provides that "[t]he provisions of this chap-

---

cipated person at that time, then the emancipation would be a complete defense to the charges against the defendant. If you find that there has been proven substantial evidence of emancipation, then the State bears the burden of proving beyond a reasonable doubt, not only the elements of the crime, but also the lack of emancipation. If the State fails in its burden of proof as I have described to you, then you must find the defendant Not Guilty. . . ."

ter shall not be construed as precluding any court from recognizing other principles of criminal liability or other defenses *not inconsistent with such provisions."* (Emphasis added.) The applicability of any common law defense not expressly provided for in the statutes is thus dependent on whether such defense is inconsistent with the provisions of the penal code. See *State* v. *Messler,* 19 Conn. App. 432, 436–37, 562 A.2d 1138 (1989). We conclude that if a "common law defense of emancipation" actually exists, its applicability would be precluded as inconsistent with the express provisions of General Statutes §§ 53a-71 and 53-21.

As originally enacted, General Statutes (Rev. to 1972) § 53a-67 provided for an affirmative defense of mistake of age. Public Acts 1969, No. 828, § 68 (b). The defense provided for the situation where the defendant may have lacked the requisite mens rea on the basis of his belief that the facts were other than as they were. Commission to Revise the Criminal Statutes, Penal Code Comments, Connecticut General Statutes § 53a-67 (1969), p. 27. By enacting No. 75-619 of the 1975 Public Acts, the General Assembly eliminated mistake of age as an affirmative defense to a violation of § 53a-71 (a) (1). Through this act, the legislature clearly expressed its will that engaging in sexual intercourse with a person under the age of sixteen years constitutes a violation of law without regard to the actor's belief as to the victim's age. To demonstrate a violation of § 53a-71 (a) (1), the state must establish that (1) the defendant had engaged in sexual intercourse with the victim and (2) at the time the victim was under the age of sixteen years. See *State* v. *Pierson,* 201 Conn. 211, 215, 514 A.2d 724 (1986) (interpreting an earlier version of § 53a-71); *State* v. *Arroyo,* 181 Conn. 426, 430, 435 A.2d 967 (1980) (same). Sexual assault in the second degree is a general intent crime that requires only that the actor possess a general intent to perform

the acts that constitute the elements of the offense. *State* v. *Pierson,* supra, 216.

The legislature has also provided that the risk of injury to a child statute turns on the age of the victim. General Statutes § 53-21. Here, the defendant was charged with a violation of that section of the statute that proscribes the commission of acts likely to impair the health or morals of any child under the age of sixteen years. The victim's age is the operative fact that makes acts perpetrated against that victim criminal in nature. See *State* v. *Dennis,* 150 Conn. 245, 250, 188 A.2d 65 (1963).

Both statutes are clear and unambiguous insofar as they relate to the crimes being age driven. "Where the language of the statute is clear and unambiguous, we have refused to speculate as to the legislative intention, because it is assumed that the words express the intention of the legislature. . . . Moreover, courts should not imply exceptions to a statute which the legislature did not prescribe by word or implication." (Citations omitted; internal quotation marks omitted.) *State* v. *Snook,* 210 Conn. 244, 267, 555 A.2d 390, cert. denied, 492 U.S. 924, 109 S. Ct. 3258, 106 L. Ed. 2d 603 (1989). The common law defense of emancipation is thus inapposite with the provisions of General Statutes §§ 53a-71 and 53-21. The trial court correctly determined that any defense based on the alleged emancipation of a child under the age of sixteen years did not constitute a defense to either a charge of sexual assault in the second degree or risk of injury to a child. The defendant's claim as to the deprivation of his constitutional rights in this regard is without merit.

## II

The defendant next asserts that the trial court's charge to the jury mandated guilty verdicts thereby depriving the defendant of his right to a fair trial. The

defendant divides his attack into two distinct claims: He claims that the trial court in its charge effectively denied his right to a separately considered verdict as to each count of the information, and that the language of the charge regarding the crime of risk of injury to a child mandated the jury to find him guilty. We are not persuaded.

The defendant posits that the trial court undermined the fact that in arriving at its verdict the jury must separately consider each count. Specifically, he points to a single paragraph in the court's charge as support for this proposition.[6]

Our review of the transcript reveals that the defendant failed to except to the portion of the charge about which he now complains. Thus, if he is entitled to review at all, it must be pursuant to the doctrine of *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989). In order to prevail on a claim of constitutional error that has not been adequately preserved at trial, the defendant must meet all of the following conditions: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the

---

[6] The portion of the trial court's charge to which the defendant points in support of his claim is: "So they are alternating sexual assault in the second and risk of injury. Two offenses arising out of the same conduct alleged by the state, developed in evidence here for you to determine. I tell you so there's no misunderstanding that a person may be convicted of both offenses. They are separate and distinct although arising out of the alleged same conduct. Understand that. That's why they are both in there in relation to [the] same dates on four different occasions, two separate offenses. The first of which is sexual assault in the second degree in this General Statute, it's of no moment to you, but it's § 53a-71 (a) (1), that is what's charged. . . . The accused is also charged, the risk of injury to a minor, charging conduct during the same times and at the same places. *You may find the defendant guilty of both sexual assault in the second degree and risk of injury to a minor if you are satisfied that any one or more of the charges or counts, as we call them, have been proven as required by proof beyond a reasonable doubt of each essential element of each offense.*" (Emphasis added.)

violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." Id., 239–40; *State* v. *Andrews,* 29 Conn. App. 533, 537, 616 A.2d 1148 (1992), cert. denied, 224 Conn. 924, 618 A.2d 531 (1993). We may, however, dispose of the claim by focusing on the condition that appears most relevant under the circumstances of the case. *State* v. *Andrews,* supra.

The defendant cannot satisfy the third prong of *Golding,* that the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial. Our review of the charge in its entirety does not support the defendant's assertion that the language complained of permitted the jury to find the defendant guilty without viewing the evidence as to each of the counts of the information. The trial court clearly informed the jury that it could find the defendant guilty of the overlapping counts of the information only if they found each of the elements of the separate crimes charged proven beyond a reasonable doubt. "A jury instruction conforms with constitutional requirements if it provides jurors with a 'clear understanding of the elements of the crime[s] charged, and affords them proper guidance for their determination of whether those elements were present.' " *State* v. *Wolff,* 29 Conn. App. 524, 530, 616 A.2d 1143 (1992), quoting *State* v. *Avila,* 223 Conn. 595, 602, 613 A.2d 731 (1992). "When examining a jury charge, we do not engage in a microscopic examination of the charge, dissecting it line by line, nor do we consider the challenged portions of the charge in isolation. . . . We read the instructions as a whole to determine whether a reasonable possibility that the jury was misled by the charge

exists. . . . The test that we apply to any part of the charge is whether the charge as a whole presents the case to the jury in such a manner that no injustice is done." (Citations omitted.) *State* v. *Andrews,* supra, 540.

A fair reading of the charge as a whole convinces us that the defendant has failed to establish that the alleged constitutional right clearly exists and clearly deprived the defendant of a fair trial. Thus, we decline to afford review of this unpreserved claim.

The second arrow in the defendant's quiver is that a single sentence in the trial court's charge mandated the jurors to find the defendant guilty of the crime of risk of injury to a child once they found that certain acts had occurred.[7] The defendant asserts that the use of the word "obligated" by the trial court unconstitutionally narrowed the jury's discretion to the prejudice of the defendant. The basis for this claim is his assertion that the linchpin of the state's case against the defendant was that he had engaged in repeated acts of sexual intercourse with the victim and that sexual intercourse does not constitute a per se violation of General Statutes § 53-21. For the proposition that sexual intercourse is not a per se violation of General Statutes § 53-21, the defendant relies on language in *State* v. *McCall,* 187 Conn. 73, 91, 444 A.2d 896 (1982), and *State* v. *Apostle,* 8 Conn. App. 216, 246, 512 A.2d 947 (1986). The defendant's reliance on these cases is misplaced.

In its charge to the jury, the trial court did not use the term sexual intercourse in describing the necessary

---

[7] The trial court's instruction challenged by the defendant reads as follows: "With regard to the charge of risk of injury, *if you find the defendant deliberately touched the private or intimate parts of [R's] body in a sexual or indecent manner you are obligated to find the defendant guilty of risk of injury to a minor. Such touch is deemed by law to be likely to impair [the victim's] morals. . . .*" (Emphasis added.)

elements of risk of injury. In fact, the trial court clearly differentiated between the acts necessary to establish the requisite element of sexual assault in the second degree and those of risk of injury to a child.[8] Thus, the defendant's assertion is unavailing.

Reviewing the charge as a whole, we conclude that it fairly presented the issues to the jury, that no reasonable possibility exists that the jury was misled by the charge and that the trial court fairly and properly differentiated between the elements of the offenses charged in the information. See *State* v. *Andrews*, supra.

### III

The defendant next asserts that General Statutes § 53a-71 (a) (1) contains an implied element of knowledge as to the age of the victim. He claims that the trial court failed to charge the jury that the defendant could not be convicted of the crime of sexual assault in the second degree unless the state proved beyond a reasonable doubt that the defendant knew or had reason to know that the victim was under the age of sixteen years when they engaged in sexual intercourse. The defendant concedes that he did not request this charge nor did he except to the charge as given. He once again seeks review of a portion of the charge under the doctrine of *State* v. *Golding*, supra.

A trial court's failure to instruct on any element of a crime warrants a reversal regardless of whether the defendant made a request to charge or took any exceptions to the charge. *State* v. *Williamson*, 206 Conn. 685, 708, 539 A.2d 561 (1988); *State* v. *Harman*, 198 Conn.

---

[8] The trial court charged the jury as follows: "The prohibitive act for sexual assault in the second degree is engaging in sexual intercourse with a person under the age of sixteen. The prohibitive act for risk of injury to a minor [is the] doing of any act likely to impair the morals of a child under the age of sixteen."

124, 134, 502 A.2d 381 (1985); *State* v. *Payne,* 12 Conn. App. 408, 414, 530 A.2d 1110 (1987). The failure to instruct on the essential elements of the crimes charged would violate the defendant's fundamental constitutional rights because he has the constitutional right to have the jury told what crimes he is being tried for and what the essential elements of those crimes are. *In re Winship,* 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *State* v. *Williamson,* supra; *State* v. *Gabriel,* 192 Conn. 405, 414, 473 A.2d 300 (1984). We are unpersuaded, however, that proof that the defendant knew or had reason to know that the victim was under the age of sixteen is an essential element of the crime of sexual assault in the second degree.

"We have no warrant for interpolating into a criminal statute a requirement it does not now contain." *State* v. *Duhan,* 194 Conn. 347, 358, 481 A.2d 48 (1984). Our function is not to improve legislative actions by reading into the statute what is clearly not there. *State* v. *Haye,* 214 Conn. 476, 481, 572 A.2d 974 (1990).

We have already noted the fact that the General Assembly eliminated as a defense to sexual assault in the second degree the claim of mistake of age. Public Acts 1975, No. 75-619. The legislature has thus clearly expressed its will that engaging in sexual intercourse with a person under the age of sixteen shall constitute an offense. *State* v. *Pierson,* supra, 215; *State* v. *Arroyo,* supra, 430.

Our Supreme Court has set forth with unquestioned and unchallenged authority its interpretation of the legislative mandate as to the necessary elements to be proven in order to establish a violation of General Statutes § 53a-71 (a) (1): (1) that the defendant had engaged in sexual intercourse with the victim; and (2) that the victim at the time of the act was under the age of sixteen years. *State* v. *Arroyo,* supra. This interpretation

has been in place since long after the repeal of the defense of mistake of age in 1975, and no statute has been enacted either to reinstate such a defense or to create an additional element of knowledge on the part of the defendant, either express or implied, of the age of the defendant. The legislature is presumed to be aware of the interpretation placed on a statute by this court and our Supreme Court, and that subsequent nonaction may be construed as a validation of that interpretation. *Phelps Dodge Copper Products Co.* v. *Groppo,* 204 Conn. 122, 134, 527 A.2d 1340 (1987). The claim of the defendant as to the existence of an implied requirement of an unexpressed additional element of the crime of sexual assault in the second degree is without merit.

The judgment is affirmed.

In this opinion the other judges concurred.