STATE OF CONNECTICUT *v.* JOHN DENBY
(12216)

LAVERY, LANDAU and HEIMAN, Js.

Argued June 10—decision released August 23, 1994

*Donald D. Dakers,* special public defender, for the appellant (defendant).

*Jack W. Fischer,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Mary Reidy,* assistant state's attorney, for the appellee (state).

LANDAU, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of possession of cocaine with the intent to sell or dispense by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b),[1] and of possession of cocaine

___

[1] General Statutes § 21a-278 (b) provides: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any narcotic substance, hallucinogenic substance other than marijuana, amphetamine-type substance, or one

with the intent to sell within 1000 feet of a school in violation of §§ 21a-278 and 21a-278a (b).[2] The defendant claims that the trial court improperly (1) instructed the jury as to an element of the crime charged, i.e., the intent to sell narcotics within 1000 feet of a school pursuant to General Statutes (Rev. to 1991) § 21a-278a (b), (2) refused to permit the defendant to elicit witness testimony as to his knowledge of the defendant's drug dependency in violation of the defendant's right to present a defense, (3) instructed the jury regarding the defendant's drug dependency, and (4) permitted the state to impeach the defendant by referring to a prior conviction for conspiracy to sell narcotics. We affirm the judgment of the trial court.

kilogram or more of a cannabis-type substance except as authorized in this chapter, and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years; and for each subsequent offense shall be imprisoned not less than ten years nor more than twenty-five years. The execution of the mandatory minimum sentence imposed by the provisions of this subsection shall not be suspended except the court may suspend the execution of such mandatory minimum sentence if at the time of the commission of the offense (1) such person was under the age of eighteen years or, (2) such person's mental capacity was significantly impaired but not so impaired as to constitute a defense to prosecution."

[2] General Statutes (Rev. to 1991) § 21a-278a (b) provides: "Any person who violates section 21a-277 or 21a-278, and who is not, at the time of such action, a drug-dependent person, by manufacturing, distributing, selling, prescribing, dispensing, compounding, transporting with the intent to sell or dispense, possessing with the intent to sell or dispense, offering, giving or administering to another person any controlled substance in or on, or within one thousand feet of, the real property comprising a public or private elementary or secondary school shall be imprisoned for a term of three years, which shall not be suspended and shall be in addition and consecutive to any term of imprisonment imposed for violation of section 21a-277 or 21a-278. To constitute a violation of this subsection, an act of transporting or possessing a controlled substance shall be with intent to sell or dispense in or on, or within one thousand feet of, the real property comprising a public or private elementary or secondary school." Public Acts 1992, No. 92-82, amended this subsection to increase the distance from a school within which the provision applied to 1500 feet.

The jury reasonably could have found the following facts. On May 17, 1992, New Haven police officers Andrew Muro and Peter Carusone were working in the Newhallville section of New Haven. Muro received information from an informant that the defendant was selling drugs at 51 Lilac Street, which was approximately 820 feet from the Lincoln Bassett School. He and Carusone, both of whom knew the defendant, drove by the address and saw the defendant on the front porch. They set up a surveillance of the defendant's activities. Muro watched the front porch from a nearby alley. Carusone remained at a police substation parking lot, ready to assist Muro upon apprehension of the defendant.

Muro observed a female walk up to the porch of the building and heard her say she "wanted one." The defendant reached into his right pants pocket, pulled out a clear plastic bag, removed an item from it, and handed it to the female. The female then gave the defendant money. A short time later, Muro saw the defendant carry out a second transaction with another individual similar to the previous transaction.

After informing Carusone of his observations, the officers returned to the premises under surveillance where Muro encountered the defendant in the hallway and arrested him. In his right pocket, the defendant had a clear plastic bag containing packets of white powder that field-tested positive for cocaine.

I

The defendant first claims that the trial court improperly failed to instruct the jury on an essential element of the crime charged, thereby depriving him of his federal and state due process rights.[3] He asserts that the

---

[3] We decline to consider the state constitutional claim in the absence of an independent analysis of the state constitutional provision at issue. We, therefore, consider only the defendant's federal constitutional claim. *State*

trial court failed to instruct the jury that a conviction pursuant to General Statutes (Rev. to 1991) § 21a-278a (b) required the state to prove beyond a reasonable doubt that the defendant specifically intended to sell narcotics in, on or within 1000 feet of the real property of a public or private elementary or secondary school. The defendant contends that a conviction pursuant to § 21a-278a (b) requires a dual intent: (1) the violator must intend to sell the narcotics in his possession; and (2) the violator must intend to sell the narcotics within 1000 feet of a school. This conclusion, the defendant asserts, is supported by the presence of an "irrebuttable presumption" in the statute that any defendant within the 1000 foot zone intended to sell the drugs in his possession. He finds this presumption in the following statutory language: "To constitute a violation of this subsection, an act of transporting or possessing a controlled substance shall be with intent to sell or dispense in or on, or within one thousand feet of, the real property comprising a public or private elementary or secondary school." General Statutes (Rev. to 1991) § 21a-278a (b). The defendant concedes that this claim was not properly preserved at trial, but contends that it is nonetheless reviewable under *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989).[4] The defendant's claim

v. *Perez,* 218 Conn. 714, 723, 591 A.2d 119 (1991); *State* v. *McFadden,* 25 Conn. App. 171, 173–74 n.4, 593 A.2d 979, cert. denied, 220 Conn. 906, 593 A.2d 971 (1991).

[4] In *State* v. *Golding,* supra, 213 Conn. 239–40, our Supreme Court held that "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances."

is not of constitutional magnitude and, therefore, does not satisfy the second requirement of *Golding*.

"It is . . . constitutionally axiomatic that the jury be instructed on the essential elements of a crime charged." *State* v. *Williamson*, 206 Conn. 685, 708, 539 A.2d 561 (1988). "The due process clause of the fourteenth amendment protects an accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970) . . . ." (Citations omitted.) *State* v. *Gabriel*, 192 Conn. 405, 413, 473 A.2d 300 (1984). Consequently, the failure to instruct a jury on an element of a crime deprives a defendant of the right " 'to have the jury told what crimes he is actually being tried for and what the essential elements of those crimes are.' " Id., 414.[5]

Proof that the defendant specifically intended to sell narcotics within 1000 feet of the real property of a school is not an element of the crime charged. In interpreting § 21a-278a (b), we must adhere to " 'well defined principles of statutory interpretation that require us to ascertain and give effect to the apparent intent of the legislature.' . . . To determine the intent of the legislature, we first consider whether the statutory language 'yields a plain and unambiguous resolution.' . . . 'If the words are clear and unambiguous, "it is assumed that [they] express the intention of the legislature"; *Mazur* v. *Blum*, 184 Conn. 116, 118–19, 441 A.2d 65 (1981); and we need inquire no further. . . .' " (Citations omitted.) *State* v. *Mattioli*, 210 Conn. 573, 576, 556 A.2d 584 (1989).

---

[5] A trial court's failure to instruct the jury on an element of the crime charged "warrants a reversal regardless of whether the defendant made a request to charge or took any exceptions to the charge. *State* v. *Williamson*, 206 Conn. 685, 708, 539 A.2d 561 (1988) . . . ." *State* v. *Plude*, 30 Conn. App. 527, 539, 621 A.2d 1342, cert. denied, 225 Conn. 923, 625 A.2d 824 (1993).

The language of General Statutes (Rev. to 1991) § 21a-278a (b) is clear that any person who violates General Statutes § 21a-278, and who does so within 1000 feet of a school shall be subject to an additional penalty of three years imprisonment. The provision that the defendant characterizes as an "irrebuttable presumption" serves instead to reinforce the requirement that, for an accused to be subject to the additional penalty, any act of transporting or possessing narcotics must be with the intent to sell the same.

The relationship between General Statutes §§ 21a-278a (b) and 21a-278 is similar to that between General Statutes §§ 53a-59a[6] and 53a-59.[7] Section

[6] General Statutes § 53a-59a provides: "(a) A person is guilty of assault of a victim sixty or older in the first degree, when he commits assault in the first degree under section 53a-59 (a) (2) or 53a-59 (a) (3) and the victim of such assault has attained at least sixty years of age or is blind or physically disabled, as defined in section 1-1f.

"(b) No person shall be found guilty of assault in the first degree and assault of a victim sixty or older in the first degree upon the same incident of assault but such person may be charged and prosecuted for both such offenses upon the same information.

"(c) Assault of a victim sixty or older in the first degree is a class B felony and any person found guilty under this section shall be sentenced to a term of imprisonment of which five years of the sentence imposed may not be suspended or reduced by the court."

[7] General Statutes § 53a-59 provides: "(a) A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument; or (2) with intent to disfigure another person seriously and permanently, or to destroy, amputate or disable permanently a member or organ of his body, he causes such injury to such person or to a third person; or (3) under circumstances evincing an extreme indifference to human life he recklessly engages in conduct which creates a risk of death to another person, and thereby causes serious physical injury to another person; or (4) with intent to cause serious physical injury to another person and while aided by two or more other persons actually present, he causes such injury to such person or to a third person.

"(b) Assault in the first degree is a class B felony provided any person found guilty under subdivision (1) of subsection (a) shall be sentenced to a term of imprisonment of which five years of the sentence imposed may not be suspended or reduced by the court."

53a-59a provides for an enhanced penalty if a person commits an assault in the first degree pursuant to § 53a-59 (a) (2) or § 53a-59 (a) (3) and the victim is sixty years old or older. In *State* v. *Campbell,* 180 Conn. 557, 564, 429 A.2d 960 (1980), our Supreme Court stated that "[b]y providing for a mandatory one year term of imprisonment, which term may not be suspended or reduced, for the crime of assault in the third degree where the victim is sixty or over the legislature clearly expressed its intent to punish one convicted of that crime more severely than one convicted of assault in the third degree where the victim is under sixty." Similarly, the legislature designed § 21a-278a to punish one convicted of a violation of § 21a-278 more severely when the prohibited activity occurred within a prescribed distance from a school.

To obtain a conviction pursuant to § 21a-278a (b), as with § 53a-59a, the state is required to prove the defendant's intent to commit the substantive underlying crime—in this case, the intent to sell the narcotics in his possession. The fact that the defendant sold narcotics within 1000 feet of a school subjects him to the enhanced penalty. It was not required to prove that the defendant specifically intended to sell within the 1000 foot zone because, by the clear language of the statute, such an intent is not an element of the crime.[8]

We conclude that the trial court properly instructed the jury as to the intent necessary to support a conviction of the crime charged. Because the defendant's claim is not one of constitutional dimension; *State* v. *Golding,* supra, 213 Conn. 239–40; we decline to review the defendant's unpreserved claim.

---

[8] " 'We have no warrant for interpolating into a criminal statute a requirement it does not now contain.' . . . Our function is not to improve legislative actions by reading into the statute what is clearly not there. . . ." (Citations omitted.) *State* v. *Plude,* 30 Conn. App. 527, 540, 621 A.2d 1342 (1993).

## II

The defendant further claims that the trial court improperly refused to allow the defendant to elicit certain testimony relating to his defense of drug dependency. He claims that the court's refusal violated his constitutional right to present a defense.

The following facts are necessary for the resolution of this claim. The defendant and his brother-in-law, Willie Garvin, testified as to the defendant's drug dependence. The defendant sought to elicit further testimony as to his dependency from Lester Moore. During the defendant's direct examination of Moore, the defendant inquired as to whether the witness had ever used drugs with the defendant, and the state objected.[9] The trial court, after excusing the jury, heard the parties' arguments, sustained the state's objection, and noted the defendant's exception. The defendant, however, failed to present an offer of proof as to Moore's testimony, and failed to request that the trial court articulate its reason for sustaining the state's objection.

In order to evaluate any claim of error, this court must be furnished with "an adequate record on which to review the rulings of the trial court." *State* v. *James L.*, 26 Conn. App. 81, 86, 598 A.2d 663 (1991).

---

[9] The following inquiries occurred during direct examination:

"[Defense Counsel]: Okay, now have you ever used cocaine with John Denby?

"[Witness]: Yes.

"[Prosecution]: Objection, leading question, Judge.

"[Court]: That objection is sustained."

The following inquiries occurred during redirect examination:

"[Defense Counsel]: Okay, now the state asked you in cross-examination if you ever bought drugs from Mr. Denby and you indicated that you had not, is that correct?

"[Witness]: That's right.

"[Defense Counsel]: Have you ever used drugs with Mr. Denby?

"[Prosecution]: Objection."

It is the appellant's burden to create an adequate appellate record to support his claim. Id., 84. The defendant has failed to meet this burden. "If he wanted to provide this court with an adequate appellate record, he should have presented an offer of proof. An offer of proof, properly presented, serves three purposes. First, it should inform the court of the legal theory under which the offered evidence is admissible. Second, it should inform the trial judge of the specific nature of the offered evidence so the court can judge its admissibility. Third, it thereby creates a record adequate for appellate review." (Internal quotation marks omitted.) Id., 84–85.

"In the absence of an appropriate offer of proof, this court cannot speculate as to what line of questioning defense counsel intended to follow. A claim on appeal cannot be based on an assumption that the trial court acted improperly. . . . Without an adequate record on which to review the rulings of the trial court, this court must assume that the trial court acted properly." Id., 85–86.

### III

The defendant next claims that the trial court improperly instructed the jury regarding the defendant's drug dependency. He concedes that this claim is unpreserved but again seeks review pursuant to *State* v. *Golding,* supra, 213 Conn. 233.[10]

A *Golding* review permits an appellant tribunal "to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." Id., 240.

"[T]he language of § 21a-269, which places the 'burden of proof' on a defendant invoking the exemption specified by § 21a-278 (b), requires the defendant to

---

[10] See footnote 4.

carry the burden of persuading the jury by a preponderance of the evidence that he or she is drug-dependent." *State* v. *Hart,* 221 Conn. 595, 609, 605 A.2d 1366 (1992). In *Hart,* the court "conclude[d] that the state did not have the burden of proving beyond a reasonable doubt that the defendant was not drug-dependent . . . ." Id., 611–12.

"[T]he absence of drug dependency is not an element of the offense of sale of narcotics by a person who is not drug-dependent in violation of § 21a-278 (b). Rather, it is an exemption from liability under § 21a-269. *State* v. *Januszewski,* 182 Conn. 142, 166, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981). Therefore, it was not necessary for the state to negate drug dependency, but, rather, the defendant had the burden of proving that she was drug-dependent." Id., 608.

Because the claimed error does not involve an element of the offense, it is not of constitutional magnitude. The defendant's claim does not satisfy the second prong of *Golding* and we decline to review it.

IV

The defendant finally claims that the trial court improperly permitted the state to impeach his testimony by referring to a prior conviction for conspiracy to sell narcotics. The defendant, citing *State* v. *Geyer,* 194 Conn. 1, 480 A.2d 489 (1984), argues that the admission of the prior narcotics conviction in a trial in which he is charged with narcotics offenses was unfairly prejudicial.

The defendant testified in his own behalf. His testimony sought to demonstrate that he was drug-dependent, thereby rendering inconsistent the police officers' account of his intention to sell drugs. When asked on

the state's cross-examination whether he had ever sold drugs, the defendant replied that he had not. The state also asked the defendant whether he dealt drugs to maintain his lifestyle. The trial court ruled that a proper foundation for introducing the defendant's prior conviction had been laid for the purposes of impeaching his credibility, and allowed the state to question the defendant about his 1989 conviction for conspiracy to distribute narcotics.[11]

"Evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice. . . . It is well established that the trial court has discretion on the admissibility of prior convictions. In such instances, the test is whether the prejudicial effect of the evidence did not outweigh its probative value. *State* v. *Rivera,* 221 Conn. 58, 72, 602 A.2d 571 (1992)." (Citations omitted; internal quotation marks omitted.) *State* v. *Johnson,* 29 Conn. App. 584, 588, 617 A.2d 174 (1992), appeal dismissed, 228 Conn. 59, 634 A.2d 293 (1993).

"Three factors should be examined to determine whether a prior criminal conviction properly has been

---

[11] The following testimony occurred:

"[Prosecution]: You never sold drugs have you, sir?

"[Defendant]: Have I sold drugs, no I ain't sell no drugs.

"[Prosecution]: Never?

"[Defendant]: Never.

"[Prosecution]: Sure about that Mr. Denby?

"[Defendant]: I'm sure about what?

"[Prosecution]: How about your conviction in 1989, sir, you've been convicted . . . ."

Defense counsel objected, the trial court sustained the objection and the state proceeded as follows:

"[Prosecution]: Mr. Denby, I believe the last thing that you had indicated was that you don't sell drugs, is that right?

"[Defendant]: That's right.

"[Prosecution]: Do you deal drugs to maintain your lifestyle?"

Defense counsel's objection was overruled, and the defendant answered: "See my shoe with paint on it, I do handy work or any kind of work like that to get drugs but I do not sell drugs to maintain my lifestyle."

admitted: (1) the extent to which admission is likely to prejudice the defendant's cause; (2) the significance of the prior crime as bearing on the defendant's truthfulness; and (3) the remoteness in time of the prior conviction." *State* v. *Geyer,* supra, 194 Conn. 11.[12]

" 'As to the first criterion, a high degree of prejudice can be expected when the prior crime is quite similar to the crime charged because of the jury's tendency to believe that "if he did it before, he probably did it again." *State* v. *Carter,* [189 Conn. 631, 644, 458 A.2d 379 (1983)].' " *State* v. *Rivera,* supra, 221 Conn. 73. The defendant argues that it is for this reason that the evidence is overly prejudicial, citing *State* v. *Geyer,* supra, 194 Conn. 1. In *Geyer,* the court held that evidence of the defendant's prior convictions was inadmissible because they were similar to the charges pending, and, therefore, the resulting prejudice outweighed the probative value as to the defendant's credibility. The *Geyer* court, however, was faced with four rather remote prior convictions that tended to engender "a greater prejudice than a single prior conviction might create." Id., 14. The court weighed the prejudicial possibility of the multiple, similar prior convictions. The court did not hold that if a defendant had a prior conviction or convictions similar to the pending charges, evidence of those convictions were inadmissible as a per se rule. See *State* v. *Rivera,* supra, 74.[13]

In *State* v. *Johnson,* supra, 29 Conn. App. 588, the court was presented with evidence of a similar prior conviction, but determined that "[w]here . . . a *party* 'opens the door' to a subject that goes directly to the

---

[12] The defendant does not claim that the prior conviction should have been excluded because of its remoteness.

[13] "[W]e note that the language in *Geyer* suggesting that the crime be referred to as an 'unspecified' felony conviction is permissive not mandatory." *State* v. *Rivera,* supra, 221 Conn. 74.

credibility of the witness, he does so at his risk." (Emphasis added.) In this case, the state questioned the defendant and he testified that he had never sold drugs and that he did not deal drugs to maintain his lifestyle. He also testified that he did whatever handy work necessary to get drugs for his alleged dependency, and that because of his dependency, he would fight to retain drugs rather than consider exchanging them for money. "This testimony suggested the nonexistence of the defendant's prior conviction [for conspiracy to distribute drugs] and squarely implicated the defendant's credibility." Id., 589. Therefore, the defendant opened the door to the introduction of a prior conviction because it went directly to his credibility as a witness. We conclude, therefore, that the trial court did not abuse its discretion in permitting the state to elicit testimony from the defendant with regard to his prior drug related conviction.

The judgment is affirmed.

In this opinion the other judges concurred.